IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| OMAR R. LEAL; aka OMAR RICARDO | § | CASE NO: 05-11154 |
| LEAL; dba ALL AMERICAN AUTO | § | |
| GLASS | § | |
|     Debtor. | § | |
| | § | CHAPTER 13 |
| | § | |
| OMAR R. LEAL | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-7009 |
| | § | |
| KEVIN MOKHABERY; dba ALL | § | |
| AMERICAN AUTO GLASS | § | |
|     Defendant. | § | |

## MEMORANDUM OPINION

For the reasons set forth below, the Court finds that Plaintiff and Defendant have each engaged in wrongful conduct with respect to the business partnership formed by them. A separate judgment has been issued.

### Background

On or around March 15, 2000, Omar Leal and Kevin Mokhabery entered into a general partnership doing business under the assumed name All American Auto Glass. The purpose of the business was the installation of automotive glass. Each party owned a 50% interest in the partnership. Mokhabery provided the capital for the business while Leal provided sweat equity and received a salary. The primary place of business was in McAllen, Texas.

On April 1, 2005, Leal filed suit against Mokhabery in the 206th Judicial District Court, Hidalgo County, Texas. Leal sought a temporary restraining order and damages due to Mokhabery's alleged waste of business assets, among other claims. On June 23, 2005,

1

Mokhabery filed a counterclaim, alleging breach of fiduciary duty, conversion and unfair competition among other allegations.

On or around May 19, 2005, the state court entered an agreed order appointing a receiver.

On October 19, 2005, Leal filed a petition for relief under chapter 13 of the Bankruptcy Code. The Plaintiff filed a notice of removal on February 21, 2006. A two-day trial was held on October 23, 2006, and October 24, 2006. Upon conclusion of the trial, the Court took the matter under advisement.

## Applicable Law

The Texas Revised Partnership Act ("TRPA")[1] governs the relations between partners unless a partnership agreement provides otherwise. TEX. REV. CIV. STAT. art. 6132b-1.03(a). A partnership has the same powers as an individual or corporation to do all things necessary or convenient to carry out its business and affairs. *Id*. at § 3.01. Unless agreed otherwise, each partner has equal rights in the management and conduct of the partnership's business and a right to access the partnership books and records. *Id.* at §§ 4.01(d), 4.03(b). Every partner is an agent of the partnership for the purpose of its business. *Id*. at § 3.02(a). Unless a partner does not have authority to act for the partnership, the act of each partner binds the partnership if the act is for apparently carrying on the partnership business or affairs. *Id.*

Absent an express agreement that a partnership is for a particular term or specific undertaking, a partnership is at the will of each person who enters into the partnership. *Bohatch v. Butler & Binion*, 977 S.W.2d 543, 545 (Tex. 1998); *Hughes v. Cole*, 585 S.W.2d 865, 869

---

[1] The Texas Business Organizations Code (BOC), enacted in 2003, codifies the TRPA. The BOC became effective on January 1, 2006 and applies to all new general partnerships formed on or after that date. The TRPA continues to govern existing general partnerships formed prior to January 1, 2006, until January 1, 2010 when existing entities automatically become subject to the BOC unless the partnership elects to be governed by the BOC prior to January 1, 2010. All American was formed prior to January 1, 2006, and there is no evidence that the partnership elected to be governed by the BOC. Accordingly, the TRPA governs the All American partnership to the extent the partnership agreement does not otherwise provide.

(Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.). A partnership at will continues until the partnership is terminated. TEX. REV. CIV. STAT. art. 6132b-2.06 & 8.02.

Section 6.01(a) of the TRPA provides that a partner ceases to be a partner on the occurrence of an event of withdrawal. *Id*. at § 6.01(a). Section 6.01(b) identifies events of withdrawal that do not require a partnership to wind up. One such event includes the partnership's receipt of notice of a partner's express will to withdraw as a partner. *Id.* at § 6.01(b)(1). In addition, § 8.01 sets forth additional events that require the winding up of a partnership. Such events include the express will of a majority-in-interest of the partners, the entry of certain judicial decrees, and a request for winding up the partnership from a partner, among other events. *Id.* at § 8.01.

Partners owe to the partnership and to each other fiduciary duties as a matter of law, including a duty of loyalty and care. *Id.* at § 4.04; *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). Such duties include a duty to: (1) account to the partnership and hold for it all partnership profits and property; (2) refrain from dealing with the partnership on behalf of a party adverse to the partnership; and (3) refrain from competing with the partnership. TEX. REV. CIV. STAT. art. 6132b-4.04(a)–(b). As a fiduciary, a partner is under an obligation not to usurp opportunities for personal gain, and equity will hold a partner accountable to the partnership for his profits if he does so. *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 18-19 (Tex. App.—San Antonio 2006, pet. filed). A partner's duties also include a strict duty of good faith and candor. TEX. REV. CIV. STAT. art. 6132b-404(d); *Zinda v. McCann St., Ltd.*, 178 S.W.3d 883, 891 (Tex. App.—Texarkana 2005, pet. denied). Thus, the partnership relation imposes upon all partners an obligation of the utmost good faith, fairness and honesty in their dealings with each other with respect to matters pertaining to the partnership business. *Bohatch*, 977 S.W.2d at 545.

When an event of withdrawal occurs, the remaining partners have the right to continue the business. *Id.* at § 2.06(a). If no event requiring a winding up occurs within 60 days after an event of withdrawal, the withdrawn partner is automatically entitled to redeem his interest as of the date of withdrawal. *Id.* at § 7.01(a). Where the withdrawal is not wrongful as defined by § 6.02, the redemption price is the fair value of the partner's interest as of the date of withdrawal. TEX. REV. CIV. STAT. art. 6132b-§ 7.01(b). If an event requiring a winding up occurs, the partnership continues until the winding up of its business is completed, at which time the partnership is terminated. *Id.* at § 8.02. The rules governing distribution upon a winding up dictate that assets first be applied to pay debts held by creditors of the partnership. *Id.* at § 8.06(a). Any surplus will be paid in cash as distributions to a partner with a positive balance in the partner's capital account. *Id*. at § 8.06(a)–(b). A partner's capital account is determined by crediting the partner's account with the partner's contributions to the partnership (consisting of cash and the value of any other contributions) and the partner's share of profits subtracting any distributions to the partner and the partner's share of the partnership losses. *Id*. at 1.01(2) & 4.01(a). Absent an agreement to the contrary, each partner is responsible for a share of the losses in proportion to the partner's share of the profits. *Id.* at 4.01(b).

## Analysis

It is undisputed that although Leal and Mokhabery entered into a partnership, they did not have a written partnership agreement. The parties' oral agreement addressed only a few matters. The parties agreed that each partner owned a 50% interest in the partnership, and that Mokhabery would provide some start-up capital and Leal would provide the day-to-day labor for the business. The parties did not provide that the partnership was for a particular term or discuss whether any events would result in a winding up of the partnership. Thus, the partnership was at

4

the will of each partner. Upon creation of the partnership in 2000, each partner owed the partnership and each other fiduciary duties including the duty of loyalty and care with respect to the All American's affairs.

The evidence shows that Mokhabery provided the partnership with limited assets upon creation of the partnership, including a truck from Mokhabery's business in Dallas, Texas, Advantage DFW Auto Glass, Inc. Leal worked on site at All American's business premises during all relevant periods while Mokhabery lived in Dallas and oversaw the business from there. In 2002, Mokhabery handled the partnership's payroll tax bills using a certified public accountant in Dallas. However, in 2003, the parties changed their business arrangement and Leal began handling All American's bills and payroll taxes, in addition to the day-to-day operations that he already oversaw. Leal admits that prior to joining All American he had never operated an auto glass business and that his office management and organization skills were poor and needed much improvement.

On April 1, 2005, Leal filed this lawsuit seeking a temporary restraining order and damages. Leal alleged that Mokhabery wasted business assets, failed to pay business debts, used the partnership name to obtain personal loans, and improperly withdrew business assets. Mokhabery filed a counterclaim, alleging breach of fiduciary duty, conversion and unfair competition among other allegations. After reviewing all the evidence, it is clear that this dispute arose because neither Leal nor Mokhabery took his fiduciary duty seriously.

*Leal's claim for damages*

Leal asserts that in 2002 Mokhabery improperly used partnership assets for personal use. Partners do not have any interest in partnership property. TEX. REV. CIV. STAT. art. 6132b-2.04. Partnership property includes property acquired in the name of the partnership or in the name of one or more partners if the instrument transferring title indicates the grantee's capacity as a partner or the existence of the partnership. *Id.* at § 2.05. All American received capital and assets from Mokhabery when the business was started. All American purchased glass from sellers under its partnership name and held bank accounts under the partnership name.

Leal alleges that Mokhabery improperly withdrew business assets and failed to account for the withdrawals. Specifically, Leal contends that Mokhabery withdrew $34,000 from a partnership account for use in Mokhabery's Dallas business. Mokhabery admits that he took $34,000 from All American's account in 2003 without approval from Leal but argues he is owed at least this much in profits that should have been dispensed to him pursuant to his 50% interest in the partnership if Leal had properly managed the business. Mokhabery is an experienced businessman, and whether or not Mokhabery was entitled to partnership profits at the time he withdrew the money, he had a duty not to use partnership property for his own benefit and knew the withdrawal was wrong. Mokhabery breached his duty of loyalty when he arbitrarily removed the money and failed to hold it for the partnership or account to the partnership for the withdrawal. Accordingly, the partnership is entitled to recover $34,000 from Mokhabery.[2]

---

[2] At trial, Leal argued that he was entitled to millions of dollars in damages based on Mokhabery's wrongful withdrawal of $34,000. Leal argued that utilizing the cost-to-revenue ratios provided by Mokhabery, $34,000 would have generated nearly four times the amount in sales, or $136,000, in 2004. In 2005, this money would have similarly generated $544,000, and in 2006, it would have generated more than $2 million. However, this argument is flawed in many ways. It assumes that All American has an infinite customer base demanding an unlimited number of auto glass sales, it assumes that the only factor regulating the profitability of the business was the amount of available capital, it assumes that such a profitable business would not attract multiple competitors, and it assumes that Leal was capable of managing the business through such growth. The Court rejects the argument as lacking any credible foundation.

Leal further asserts that Mokhabery improperly used All American's bank account to pay taxes for his Dallas business, Advantage DFW Auto Glass, Inc. The evidence shows that 14 checks totaling $23,656.91 were paid to Chase Bank from an All American bank account. In the Memo section on each check is typed "75-2879360." Leal asserts that this number is the tax identification number for Advantage DFW Auto Glass. Mokhabery testified that his accountant paid All American's taxes for 2002 from Dallas and that these checks were used for this purpose, but were simply mislabeled by the accountant. Leal has presented no evidence that All American is liable for any outstanding tax debt for 2002, or any evidence that he paid All American's taxes himself in 2002. To the contrary, the evidence before the Court shows that Leal began handling the partnership's taxes in 2003 and that notices of federal tax liens have only been filed for the tax periods encompassing 2003 and 2004. Accordingly, Leal has failed to meet his burden of proof with respect to these alleged damages.

Leal also seeks damages in the amount of $7,150.59 based on rebates that Mokhabery allegedly received pursuant to purchases he made on behalf of glass for All American. The evidence shows that Mokhabery received these rebates between July 16, 2003, and March 11, 2004. Although Mokhabery admits that he received such rebates, he argues they were for purchases for his Dallas business in addition to All American's business, and that his negotiations with these sellers saved All American $30,000 in glass costs. The evidence is clear that the $7,150.59 was credited for purchases made on two accounts for All American. Partnership property includes property acquired in the name of one partner where the instrument transferring title to the property indicates the existence of a partnership regardless of whether the name of the partnership is indicated. TEX. REV. CIV. STAT. art. 6132b-2.05(a)(2). There is no

7

evidence that the partnership or Leal approved Mokhabery's personal receipt of the rebates. Accordingly, the partnership is entitled to recover $7,150.59 from Mokhabery.

With respect to Leal's other causes of action, Leal has failed to meet his burden of proof. Leal has not presented evidence concerning the alleged waste of business assets or use of the partnership name to obtain personal loans. Leal did present evidence of past due advertising bills and 2003 and 2004 taxes owed by the partnership. However, the evidence shows that in 2003 and subsequent years, Leal was in control of the partnership accounts and had accepted responsibility for paying the payroll and partnership bills. Although Leal demanded that Mokhabery contribute to the partnership's advertising debts due to the Yellow Pages, it is unclear what time period the bill for the Yellow Pages' advertisements encompassed. The evidence shows that Mokhabery refused to pay the bill since Leal was in possession of all of the advertised phone lines at the time the request to pay was made. Finally, Leal is not entitled to attorneys fees based on the total absence of evidence in support of a fee recovery.[3]

*Mokhabery's claim for damages*

In his counter petition, Mokhabery argues that Leal breached his fiduciary duties. Mokhabery also asserted causes of action for conversion, unfair competition, an accounting and fraud, and sought a declaratory judgment and an injunction against Leal. Mokhabery also asserted claims against J.D. Garcia. No evidence imposing liability against Garcia was introduced.

The crux of Mokhabery's argument for damages based on the various causes of action is that Leal failed to properly run All American's business. Mokhabery's argument focuses on two claims: (1) that the partnership should have been more profitable, and (2) that Leal failed to keep

---

[3] In his closing argument at trial, Leal requested $24,000 in attorneys fees. Mokhabery objected based on insufficient evidence. The Court sustained the objection.

proper accounting records. Mokhabery testified that based on his experience in the auto glass business, the average markup is approximately 300% so that for every $50 in glass purchases the business should generate sales of $150. Based on this, Mokhabery seeks damages. Mokhabery's argument is defective. First, the evidence shows that Mokhabery's personal businesses' cost-to-revenue ratio was higher than 33%. Mokhabery even admitted that his individual businesses lost money at times but defended his assertions regarding the proper cost-to-revenue figures by explaining that the businesses were dissimilar since he purchased glass in bulk from a wholesaler or dealt in other business areas in addition to auto glass. Essentially, Mokhabery is upset with Leal's management of the business and the fact that All American was not as profitable as he expected. Business ventures and partnerships involve risks, and absent a contractual guarantee or tortuous conduct, there is no legal remedy available to a businessman who is later disappointed by the partnership's actual revenues or profits. Even if the Court assumes that Leal ran the business poorly, absent a showing of wrongful conduct, poor management performance is not actionable. At best, Mokhabery established that Leal was a poor manager.

Mokhabery further alleges that Leal was not depositing cash for the business or properly accounting for actual revenue as required and seeks damages for this fraud. Again, the basis of these arguments is that Leal did not handle the business as Mokhabery would have preferred. In particular, Mokhabery testified that he taught Leal the procedures to organize and manage the business. When a potential customer called, All American would offer a quote. If the customer agreed to have the work completed, All American would issue a work order showing that the work would be completed. Upon completion of the work, an invoice was to be issued. Although not all quotes would turn into work orders, ideally all work orders would become invoices and revenue for the partnership. Based on this model, Mokhabery presented evidence regarding the

number of quotes made by All American and the number of work orders prepared and compared these numbers to the partnership's revenues. Mokhabery contends that Leal was either receiving unreported payments in cash or converting partnership assets because the revenue did not equal that shown on the work orders.[4] However, Mokhabery admitted that some clients do not pay. Leal also testified that his organization and accounting skills are below par and therefore he often failed to create invoices or proper reports. In addition, the evidence shows that Leal paid many business operations expenses in cash before such revenues were ever deposited into the partnership's bank accounts. Although the Court recognizes that there were some discrepancies within the All American glass purchase and sales figures initially provided by Leal, Leal addressed the discrepancy and subsequently provided amended figures. While Leal's management of All American's business operations may have been sub par, the evidence is insufficient to prove damages.

On March 30, 2005, John D. Garcia, Leal's attorney, sent a letter to "All American Auto Glass, ATTN: Kevin Mokhabery." The letter stated that "Mr. Leal has decided to pull out in [sic] the general partnership agreement and purse [sic] a more singularity approach to his business model." This letter operated as an event of withdrawal when received by Mokhabery on or around April 1, 2005.[5] As a result, Leal ceased to be a partner of All American on April 1, 2005. TEX. REV. CIV. STAT. art. 6132b-6.01(a). Because a partnership requires two or more partners,[6] Leal's letter expressing his will to withdraw from the partnership was effectively a

---

[4] Mokhabery introduced evidence of numerous checks which he alleged Leal used to pay personal expenses or receive cash from the business. The Court finds that the evidence was insufficient for Mokhabery to meet his burden of proof with respect to these checks.

[5] Mokhabery testified that he received the letter dated March 30, 2005, on a Thursday or Friday morning. March 30, 2005, was a Wednesday and the letter appears to have been faxed at 8:44 p.m. on March 30, 2004.

[6] Under Texas law, a partnership is defined as "an association of two or more persons to carry on a business for profit." TEX. REV. CIV. STAT. art. 6132b-2.02(a). Thus the withdrawal of Leal, one of All American's two partners,

request for a winding up of the partnership. *Id.* at § 2.02(a), §8.01(g).[7] Nonetheless, the partnership continues to exist at least for purposes of winding up the partnership business. *Id.* at §§ 2.06 & 8.02. Section 8.02(a) sets forth who is authorized to perform necessary acts with respect to the partnership business after the occurrence of an event requiring a winding up. A partner who has not withdrawn is one such person. *Id.* at 8.02(a)(1). Because Leal withdrew from the partnership and Mokhabery was the only remaining partner, Mokhabery was the only partner authorized to wind up All American's business and affairs.

However, the evidence is undisputed that after notifying Mokhabery that he wished to pull out of the partnership, Leal took cash from All American's bank accounts and customers, as well as All American's business equipment, to use in a new auto glass business, Starline Glass Distributors Inc., which Leal created  Leal admits that he operated Starline's business under the name of All American Auto Glass and that he changed the locks on the partnership premises and excluded Mokhabery, All-American's sole remaining partner, from any access to Starline or the partnership assets. Then Leal filed this action seeking a temporary restraining order against Mokhabery. When the state court appointed a receiver and Mokhabery sought to compel Leal's compliance with the court order, Leal filed bankruptcy.

Leal's conduct was clearly wrongful. Once he withdrew from the partnership, Leal did not have any right to control All American or to determine what was in All American's best

---

effectively dissolved the partnership. *See, e.g., Resolution Trust Corp. v. Ocotillo West,* 840 F. Supp. 1463, 1481 (D.N.M. 1993) (because general partnership requires two or more partners, withdrawal of one partner causes dissolution).

[7] Partners that constitute 50% in interest are indirectly vested with the power to require winding up by virtue of § 8.01(g). Under § 8.01(g), the request of a partner (other than a partner who has agreed not to withdraw) for winding up of an at-will partnership requires a winding up 60 days after notice to the partnership of the of the request unless a majority-in-interest of the partners agree to continue the partnership. TEX. REV. CIV. STAT. art. 6132b-8.01(g). A "majority-in-interest" is defined as partners owning more than 50% of the current interest in profits of the partnership. *Id.* at § 1.01(10). Consequently, where a partner with a 50% interest in the partnership desires to wind up the business, there will not be a majority-in-interest of partners required to deny the request for a winding up.

interest. Leal's rights were then limited to the redemption price of his partnership interest. However, because the partnership consisted of only two partners, Leal's withdrawal effectively constituted an event requiring a winding up that left Mokhabery as the sole remaining partner authorized to wind up All American's business. Instead, Leal took the partnership assets and excluded Mokhabery from access to them. Leal then started a new auto glass business, Starline, using the partnership's assets. Conversion occurs when a person makes an unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion or inconsistent with the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). Here, Leal had no interest in the partnership property and was no longer a partner with the authority to act on behalf of the partnership or fiduciary duties owed to the partnership.[8] However, as a former agent of the partnership and one who remained in possession of the partnership property subsequent to his notice of withdrawal, Leal still owed duties to the partnership that an agent owes its principal following termination of the agency. TEX. REV. CIV. STAT. art. 6132b-1.04(a); *see also Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 202 (Tex. 2002) (although an at-will employee may plan to go into competition with his employer, he may not appropriate his employer's funds or carry away customer information). There is no dispute that the money was in the partnership's bank accounts or due to the partnership and Leal had no individual right to take the property. Accordingly, the Court finds that Leal is guilty of conversion.

Leal seeks to justify his wrongful conversion of All American's assets and argues that he took possession of the partnership assets only after Mokhabery improperly withdrew money from the partnership's accounts. He testified that he never intended that Starline be solely his

---

[8] For example, the duty not to compete set forth in TRPA § 4.04 only applies to partners. TEX. REV. CIV. STAT. art. 6132b-4.04(b)(3).

12

business, but that he established Starline to continue the partnership's business and protect the partnership's assets from Mokhabery so that he could pay the partnership's debts. The Court does not find this testimony to be credible. Instead, the Court concludes that Leal intended to convert the partnership's remaining assets to his own use. Notwithstanding the complexity of the facts involved in this matter and the wrongdoing by both partners, the law is clear—if a partner withdraws, he ceases to be a partner. Leal may not tender his notice of withdrawal and then continue acting as a partner, exercising control over the business and claiming profits by reason of the partnership's business. Such acts violate Texas partnership law and subject Leal to liability for theft or conversion of All American's property. That is the path Leal chose to pursue in this matter. Subsequent to his withdrawal, Leal disregarded the law and treated All American's assets as his own. He is liable for his wrongful actions.

The Court finds that the fair market value of the assets was $145,000. Mokhabery testified that All American held approximately $30,000 in inventory at the time of Leal's withdrawal. He further testified that All American's accounts receivables for the partnership's business with insurance companies was approximately $20,000-$40,000 and that the partnership owned 12-13 phone numbers by which it received the majority of its business. Although the precise value of the telephone numbers is not known, there is no question that the rights to the phone numbers, and other intangibles including the business name, had substantial value. In addition, Leal's bankruptcy schedules disclose various assets of Starline. Schedule B lists Leal's personal property as including two bank accounts for Starline Glass Distributors Inc. in the amounts of $1,454.14 and $659.04, as well as 100% stock in Starline's assets valued at

$13,950.00. Schedule B further lists four vehicles valued at $35,000[9] and business equipment valued at $1,250.

The Court notes that Leal was the wrongdoer when he converted the assets. When he converted the assets, he held them in trust for the partnership. As the holder of assets in trust, he bore the burden to account for the assets. Leal failed on that burden. The Court will accept Mockhabery's values.

In addition, the Court finds that Leal is liable for damages caused by his wrongful conversion of the partnership name under which he admits he operated his new business, Starline. The evidence shows that in 2005, Starline's bank deposits totaled $322,536.26 and expenses totaled $381,289.94. These expenses, however, included $23,081.91 that Leal spent for legal and professional fees relating to his chapter 13 bankruptcy case and this litigation. Thus, Starline's actual business expenses were $358,208.03. The business operated at a loss. The Court declines to award additional damages based on those operations.

The Court is very troubled by the conduct of each partner in this case. When he took over the records and responsibility for paying the partnership bills in 2003, Leal had a responsibility to maintain the partnership records. Leal clearly failed at this and breached his fiduciary duties. Mokhabery is an experienced businessman and knew that he did not possess any interest in the partnership property that would allow him to arbitrarily withdraw funds when he wanted to do so. When Leal withdrew from the partnership, neither partner followed the law as to how to wind up the partnership.[10] Leal disregarded the legal effect of his withdrawal and

---

[9] Leal testified that he personally provided two 1994 Ford Ranger trucks to All American. He further testified that Mokhabery provided one truck, a 1999 Toyota Tacoma, without an engine to All American which Leal paid $3,000 to repair. Leal's schedules list a 1999 Toyota Camry valued at $7,700, a 2003 GMC Sonoma valued at $10,125, a 1999 Toyota Tacoma valued at $12,450, and a 1994 Ford Ranger valued at $4,725.

[10] Texas law provides that a winding up should occur "as soon as reasonably practicable." TEX. REV. CIV. STAT. art. 6132b-8.03(b).

14

Mokhabery failed to invoke his rights under Texas law.[11] Once the parties appeared in court to resolve their issues, Leal refused to comply with the state court's orders. The conduct of both parties is inexcusable, however the conduct of Leal is much more atrocious. Accordingly, the Court denies Leal's request that the Court use its inherent powers to dissolve the All American partnership and award Starline to Leal.

Despite this ruling, the Court does not find that Mokhabery is innocent. As discussed above, Mokhabery breached his fiduciary duties and is liable to the partnership. In addition, Mokhabery started a competing business in April 2005. Mokhabery admits that he ran this business for approximately 15 months. Such conduct conflicts with Mokhabery's duties owed to the partnership. Even though Leal's withdrawal occurred prior to Mokhabery's creation of the business, Mokhabery remained a partner until the winding up of All American's affairs was complete and the partnership terminated. However, given the fact that Leal wrongfully continued to operate the partnership and has presented no evidence of damages due to the competing business,[12] the Court denies this claim.

Under Texas law, Mokhabery is the only partner presently authorized to wind up All American's affairs. Based on the evidence before the Court, the Court finds that it is appropriate for Mokhabery to wind up the partnership's affairs. Within 10 days after entry of this order,

---

[11] The parties testified that they discussed the possibility of a buy-out by one partner of the other partner's interest. Mokhabery testified that he offered Leal the opportunity to purchase the All American business at a reasonable price, but that Leal did not make any offer. Leal similarly testified that Mokhabery offered him $100,000 to purchase the entire business if Leal remained liable for the partnership debts which were approximately $98,000 at that time. No agreement was reached. Although both parties argue the other is at fault for failing to negotiate in good faith, neither had a duty negotiate a purchase of the other's partnership interest.

[12] Although Mokhabery testified that this business earned approximately $20,000-$30,000 per month, he admitted that it did not make any profit but actually lost money.

Mokhabery shall establish a bank account in the partnership's name into which payments shall be deposited.

Because Leal has operated the business for nearly 22 months, the Court finds that it is appropriate to order Leal to pay the partnership the fair market value of the assets as of the date of his wrongful withdrawal, with interest from April 1, 2005. Prior to February 1, 2007, Leal shall deposit $145,000 into the partnership account.

Prior to February 1, 2007, Mokhabery shall deposit $41,150.59 into the partnership account, with prejudgment interest from April 1, 2005.[13]

Upon receipt of these payments, Mokhabery is ordered to comply with the Texas Revised Partnership Act. Thus, Mokhabery is ordered to satisfy the debts of the partnership from the cash received from the liquidation of the partnership assets. *See* TEX. REV. CIV. STAT. art. 6132b-8.06(a). To the extent a deficiency remains, the parties are each ordered to contribute 50% of the partnership's total deficiency to satisfy all partnership debts.[14] To the extent any surplus remains, each partner shall be paid in cash in an amount equal to any positive balance in the partner's capital account. *Id*. at 8.06(b).

The Court recognizes that either Mokhabery or Leal or both may fail to deposit the required amounts into the partnership account. The partnership may enforce its judgment against the partner failing to make the deposit into the partnership account. If Leal fails to deposit the $145,000 plus interest into the partnership account, Mokhabery may act in the name of the partnership to collect the $145,000 judgment from Leal. If Mokhabery fails to deposit

---

[13] There is insufficient evidence to determine the exact date of Mokhabery's unauthorized withdrawals. However, it is apparent that the unauthorized withdrawals occurred prior to April 1, 2005. Accordingly, no pre-judgment interest is awarded prior to April 1, 2005.

[14] This amount is separate and above and beyond any liability owed to the partnership by Leal or Mokhabery as ordered above.

$41,150.59 plus interest into the partnership account, Leal may act in the name of the partnership to collect the $41,159.59 from Mockabery.

The Court notes that these amounts are due to the partnership. Leal and Mockabery may not offset these amounts against amounts owed to each other.

A separate judgment will be issued.

Signed at Houston, Texas, on January 9, 2007.

MARVIN ISGUR
United States Bankruptcy Judge